UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TREVIN ANDERSON, ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:26-CV-299-SDJ |
| | § | |
| NELSON BROS. READY MIX, LTD. | § | |
| | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Nelson Bros. Ready Mix, LTD's Motion to Sever Plaintiffs' claims or, in the alternative, Motion for Separate Trials. (Dkt. #7). The Motion has been fully briefed. (Dkt. #12) (Plaintiffs' Response in Opposition); (Dkt. #13) (Defendant's Reply); (Dkt. #15) (Plaintiffs' Sur-Reply). Having considered the briefing, the record, and the applicable law, the Court concludes that the motion should be denied.

## I. BACKGROUND

Plaintiffs Broderick Kelley and Trevin Anderson were employees of Defendant Nelson Bros. Ready Mix, LTD ("NBR") and worked together as mixer truck drivers at Defendant's Farmersville Plant. (Dkt. #1 ¶ 1); (Dkt. #1 ¶ 5). Anderson, who had previously worked for NBR in 2018, returned in 2020 and remained with the company until 2023. (Dkt. #1 ¶ 1); (Dkt. #1 ¶ 15). Kelley worked for NBR from 2022 to 2023. (Dkt. #1 ¶ 1).

During this time, Plaintiffs were allegedly subjected to "racial comments and slurs from non-Black employees, including co-workers, other drivers, the dispatcher, and their supervisors." (Dkt. #1 ¶ 1). Plaintiffs allege that "racial slurs were said to

them directly and in their presence," and that "racial slurs were often used on the radios that could be heard by all of the mixer drivers, dispatcher and managers." (Dkt. #1 ¶ 30). The racial slurs, Plaintiffs claim, were "severe or pervasive and created an abusive working environment." (Dkt. #1 ¶ 30).

Plaintiffs also allege that they were subjected to disparate treatment because of their race, including disparate disciplinary practices and payment of wages below that of non-Black mixer truck drivers. (Dkt. #1 ¶ 2). Plaintiffs were paid different wages, with Anderson making $26 per hour plus bonuses in his full-time position while Kelly made $25 per hour plus bonuses in his full-time position. (Dkt. #1 ¶¶ 15–16). Plaintiffs claim that "they are aware that other non-Black mixer drivers were paid at higher per hour rates and received pay increases and more bonuses than they did." (Dkt. #1 ¶ 42). Plaintiffs also claimed that they were disciplined more harshly than non-Black mixer truck drivers. *See* (Dkt. #1 ¶ 43) (citing a specific example of Kelley being "disciplined because he injured himself even though non-Black drivers did not receive the same level of discipline for injuring themselves"). Further, Plaintiffs claim that, as a result of those write-ups, they were denied bonuses. (Dkt. # 1 ¶ 43).

According to NBR, Plaintiffs did not report any of the alleged acts of harassment or disparate treatment under NBR's formal reporting policies and procedures. (Dkt. #4 at 5). However, Plaintiffs claim that they were terminated in retaliation for their "opposition to the racial hostility that pervaded the Defendant's workplace." (Dkt. #1 ¶ 3). At a safety meeting conducted by NBR, Anderson "reported

that he and other drivers felt that the work environment had turned hostile," before stating that the "drivers have a right to file a charge of discrimination with the EEOC." (Dkt. #1 ¶ 26). Anderson alleged that following his comments at the meeting, NBR gave him a disciplinary write-up and suspended him for three days. (Dkt. #1 ¶ 26). A few months later Anderson was terminated after he emailed a complaint to "Human Resources relating to his racially discriminatory treatment by the company," with NBR "fail[ing] or refus[ing] to give him a reason for the termination." (Dkt. #1 ¶¶ 27, 51). Kelley was terminated on a different date under different circumstances, with Kelley alleging that he complained to other drivers about racial slurs being directed towards him and told one dispatcher to stop calling him "boy." (Dkt. #1 ¶ 28). Kelley claims that "[w]ithin 6 months of his opposition to the racially hostile work environment, Kelley was terminated by Defendant." (Dkt. #1 ¶ 28).

NBR maintains that Plaintiffs were terminated for different disciplinary reasons. *See* (Dkt. #7 ¶ 10–11). NBR states that Kelley was terminated for "accumulat[ing] multiple disciplinary incidents in less than a year," including alleged safety and performance issues such as a "ladder-related safety incident in November 2023 that led to his termination." (Dkt. #7 ¶ 10). As to Anderson, NBR's "position is that Anderson received written corrective action or written violations for different [safety and performance related] incidents," including verbal confrontations with co-workers and disruption of the safety meeting. (Dkt. #7 ¶ 11).

Kelley and Anderson filed separate charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on the same day, with NBR

submitting separate position statements addressing each charge. (Dkt. #7 ¶ 9). After Plaintiffs received their right to sue letters from the EEOC, they filed the present suit against NBR alleging a racially hostile work environment, disparate treatment and pay, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), and the Texas Commission on Human Rights Act ("TCHRA"). *See* (Dkt. #1). Both Plaintiffs seek back pay and front pay, among other damages. (Dkt. #1 ¶ 4).

NBR then filed the present Motion to Sever contending that the claims are improperly joined because Plaintiffs have "two separate and distinct employment disputes" with different incidents, witnesses, and protected activities. (Dkt. #7 ¶ 1). Plaintiffs filed a response in opposition to the Motion to Sever, with NBR then filing a reply. (Dkt. #12); (Dkt. #13). Plaintiffs additionally filed a Sur-Reply. (Dkt. #15).

## II. Legal Standard

Rule 21 allows the court to "sever any claim against a party." Fed. R. Civ. P. 21. Courts have discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010); *see also Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000) (stating that "a trial court has broad discretion to sever"); *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995) (noting that under Rules 20 and 21, a "district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice").

"Severance under Rule 21 creates two separate actions or suits where previously there was but one." *U.S. v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983). "'Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other.'" *Haynes v. Miller*, 341 F.App'x 969, 970 n.1 (5th Cir. 2009) (per curiam) (quoting *Allied Elevator, Inc. v. E. Tex. State Bank of Buna*, 965 F.2d 34, 36 (5th Cir. 1992)).

Courts in the Fifth Circuit use Rule 20 to determine if parties are misjoined under Rule 21. *Acevedo*, 600 F.3d at 521–22 ("Since Rule 21 does not provide any standards by which district courts can determine if parties are misjoined, courts have looked to Rule 20 for guidance."). Under Rule 20, joinder of plaintiffs is appropriate when (1) "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all plaintiffs will arise in the action." FED. R. CIV. P. 20(a)(1).

"Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see also Castillo v. Lennar Corp.*, No. H-08-1469, 2008 WL 4425298, at *1 (S.D. Tex. Sept. 23, 2008) (noting that joinder is specifically strongly encouraged in the employment discrimination context).

"The party seeking severance under Rule 21 or separate trials under Rule 42(b) bears the burden of proving that such action is necessary." *Aspen Tech., Inc v. Kunt*, No. 4:10-CV-1127, 2011 WL 86556, at *3 (S.D. Tex. Jan. 10, 2011).

## III. DISCUSSION

Courts in the Fifth Circuit consider the following factors in determining whether to sever claims under Rule 21:

> (1) whether the claims arise out of the same transaction, occurrence, or series of transactions or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Def. Distributed v. Bruck*, 30 F.4th 414, 431 (5th Cir. 2022).

NBR moves to sever the claims of each Plaintiff, or, alternatively, for separate trials. (Dkt. #7 at 11). In support of its motion, NBR contends that Plaintiffs have two separate employment disputes with distinct "employment histories, disciplinary records, alleged protected activities, alleged experienced harassment, alleged comparators, termination events, witnesses, documentary proof, defenses, and damages." (Dkt. #7 at 1). NBR maintains that Plaintiffs' claims should be severed because "[t]rying both Plaintiffs' claims together would force the jury to hear two separate mini-trials, blur evidentiary lines between the Plaintiffs' distinct claims, and create the substantial risk that evidence admissible as to one plaintiff will improperly influence the jury's assessment of the other." (Dkt. #7 at 2).

Plaintiffs respond that their claims are factually and legally intertwined and arise out of the same discriminatory treatment. (Dkt. #12 at 4). In support of this

assertion, Plaintiffs state that their "claims arise from many of the same incidents, and they will share many of the same witnesses and evidence." (Dkt. #12 at 4). Therefore, they contend that severance would "unnecessarily burden the parties, the Court, and the witnesses" as well as "create[] a risk of the juries rendering inconsistent findings as to the factual issues that are identical in each case." (Dkt. #12 at 4). Thus, they maintain that severance "is, at best, premature" in this case. (Dkt. #12 at 4). For the following reasons, the Court agrees.

**A. Same Transaction or Occurrence**

NBR contends that Plaintiffs' claims are "not different chapters of one shared event; they are separate employment disputes involving separate incidents and separate fact questions." (Dkt. #7 at 6). Because of this, they state that "[a] jury could not decide one [after deciding the other] without separately evaluating a different sequence of facts." (Dkt. #7 at 7). Plaintiffs respond that their "harassment and retaliation claims arise out of the same hostile work environment and incidents of witnessing" discriminatory comments from co-workers and supervisors. (Dkt. #12 at 6).

The "arising out of the same transaction, occurrence, or series of transactions or occurrences" requirement is met if there is "some connection or logical relationship between the various transactions or occurrences" giving rise to the Plaintiffs' claims. *Horne v. Tex. Dept. of Transp.*, No. 4:19-CV-405-KPJ, 2019 WL 5550626, at *4 (E.D. Tex. Oct. 28, 2019) (quoting *Jones v. Wal-Mart Stores, Inc.*, No. 1:05-CV-121,

2006 WL 8441384, at *1 (E.D. Tex. Feb. 6, 2006)). "A logical relationship exists if there is some nucleus of operative facts or law shared by the transactions." *Id.*

The "arising out of" factor is met here. *See id.* at *5 (stating that in the "employment context, a series of transactions or occurrences is logically connected when the transactions or occurrences take place in the same workplace location, during the same timeframe, under the same supervisory regime"). Plaintiffs were both mixer truck drivers at NBR's Farmersville location. (Dkt. #1 ¶ 5). While, as NBR maintains, there are some periods of employment history as well as disciplinary and termination actions that are different between the Plaintiffs, (Dkt. #7 at 6), the Plaintiffs' harassment and discrimination claims arise out of the same alleged hostile work environment and incidents of discrimination. *See* (Dkt. #12 at 6). Plaintiffs' Complaint describes alleged discriminatory acts occurring at the Farmersville plant during a common time period. (Dkt. #1 ¶¶ 18–28). Plaintiffs both describe instances of hearing racial slurs communicated over the radio, (Dkt. #1 ¶ 19), and co-workers calling Plaintiffs and other Black employees racial epithets, (Dkt. #1 ¶¶ 18–19). Plaintiffs allege the same general pattern and practice of disparate wage and discipline treatment, albeit with some different specific instances. (Dkt. #1 ¶¶ 42–44). Finally, Plaintiffs both allege that they were terminated in retaliation for complaining about the "racially hostile work environment" they encountered at NBR. (Dkt. #1 ¶¶ 51–52).

Based on the allegations discussed above, Plaintiffs' claims arise out of the same alleged "hostile work environment," and are not "separate factual narratives"

as NBR contends. *See* (Dkt. #7 at 7). Plaintiffs' claims logically relate to each other through many of the shared instances of alleged harassment and patterns of discriminatory and disparate treatment that they experienced in the same work environment. *See* (Dkt. #12 at 6). In short, Plaintiffs worked at the same facility, under the same supervisors, in the same roles, and allegedly experienced racial discrimination. *See Dixon v. Garland*, No. 3:22-CV-1827-D, 2023 WL 121994, at *3 (N.D. Tex. Jan. 6, 2023) (granting Motion to Sever where plaintiffs "worked in different facilities, under different supervisors, in different positions, and were allegedly discriminated against for different reasons and at different times."). Accordingly, the Court concludes that the claims against NBR are logically related and, therefore, arise out of the same series of transactions or occurrences.

**B. Common Questions of Law or Fact**

While NBR admits there are some "broad questions common to both plaintiffs," they contend that "Rule 20 requires more than surface-level similarity" and, as a result, the broad common questions raised here are not substantial enough to justify joinder. (Dkt. #7 at 7). Plaintiffs contend that their claims arise from common questions of law and fact, and thus, are properly joined. (Dkt. #12 at 7).

To satisfy Rule 20's "common question" factor, Plaintiffs need only show that there is "at least one common question of law or fact linking all claims." *Acevedo*, 600 F.3d at 521; *see also Taylor v. Turner Indus. Grp.*, LLC, No. 2:11-CV-57, 2012 WL 12895343, at *1 (E.D. Tex. Mar. 16, 2012) (stating that the only requirement is that there be one common question of law or fact among all the Plaintiffs); *Castillo*,

2008 WL 4425298, at *1 ("Only some—not all—questions of law or fact need to be common to both plaintiffs.").

A common question of law or fact exists when "each of plaintiff's claims are based on violation[s] of the same law and share a 'common nucleus' of underlying facts." *Horne*, 2019 WL 5550626, at *3 (citing *Wagoneka v. KT&G USA Corp.*, No. 4:18-CV-859-ALM, 2019 WL 4052484, at *5 (E.D. Tex. Aug. 8, 2019)). A common question of fact exists when the facts concerning each of one plaintiff's claims are "inextricably woven together" with the facts concerning the other plaintiff's claims. *Id.* (citing *Nor-Tex Agencies, Inc. v. Jones*, 482 F.2d 1093, 1100 (5th Cir. 1973)). Relatively minor factual differences between different plaintiffs' claims do not require severance when "plaintiffs' claims otherwise share a common nucleus of law and fact." *Id.* at 4.

The Court finds that Plaintiffs have shown the existence of more than one specific common question of law or fact. As a starting point, Plaintiffs bring the same causes of action against NBR for a racially hostile work environment and disparate treatment. *See* (Dkt. #1 ¶¶ 29–39). Additionally, both Plaintiffs worked as mixer truck drivers at NBR, were employed by NBR at the Farmersville plant with an employment overlap of one year, and worked with the same co-workers and dispatchers under the same supervisor. (Dkt. #1 ¶¶ 1, 5). While there are some individualized factual questions regarding each Plaintiffs' case, these individualized questions still relate to both Plaintiffs' experiences with an allegedly "hostile work environment." *See* (Dkt. #12 at 7). For example, Plaintiffs cite specific instances of

racial slurs used by co-workers, supervisors, and the dispatcher, which were either directed at them or at Black people generally; allege they both experienced a pattern of disparate disciplinary practices and disparate pay; and allege that they were terminated in retaliation for complaining about these discriminatory experiences. *See* (Dkt. #12 at 7).

Plaintiffs allege enough shared instances of discriminatory and disparate treatment to avoid asserting individualized claims. *Compare Salih v. Prospect Airport Servs., Inc.*, No. 3:24-CV-1353, 2024 WL 5173322, at *3 (N.D. Tex. Dec. 19, 2024) (stating that the common question of fact or law factor was not met where "two of the three plaintiffs assert additional, entirely different claims that are not shared by any other plaintiff"), *with Taylor*, 2012 WL 12895343, at *2 ("While each Plaintiff may have experienced harassment by co-workers or supervisors of differing levels or have been denied advancement despite an allegedly lack of non-discriminatory reasons, their claims [] raise common questions of fact and law regarding Defendants' corporate culture and how such harassment and discrimination is permitted."). The similarity between Plaintiffs' claims is therefore sufficient to satisfy the requirement that they share common questions of law or fact.

**C. Settlement and Judicial Economy**

NBR contends that a joint trial would cut against judicial economy because the jury would need to "hear, and keep separate, two different employment histories, two different disciplinary tracks, two different alleged protected activities, two different termination theories, two different harassment narratives, and two different

damages cases." (Dkt. #7 at 8). In contrast, Plaintiffs assert that severance would "undermine judicial economy" by multiplying the number of dockets for the Court and parties to manage and by requiring "witnesses to testify twice to the same facts." (Dkt. #12 at 8) (emphasis omitted).

Because there are substantial common questions of law or fact in this case, *see supra* Part III.B, Plaintiffs' argument is more persuasive on this issue. In this regard, the record demonstrates common underlying facts and witnesses to the alleged harassment and disparate treatment such that granting severance would work against judicial efficiency, resulting in delay and inconvenience to the parties, the witnesses, and the Court. *See Aguirre v. Valerus Field Sols. LP*, No. 4:15-CV-03722, 2017 WL 2982299, at *4 (S.D. Tex. July 13, 2017) (finding that where common questions of law and fact exist, severance would likely result in "delay, inconvenience, and an overall lack of judicial economy"). Therefore, judicial economy weighs in favor of joinder.

**D. Prejudice**

NBR urges that having a single jury trial would prejudice them in three ways: (1) it would confuse the jury; (2) it would create evidentiary spillover; and (3) it threatens unfair claim-bolstering. (Dkt. #7 at 9). NBR maintains that because various different facts make up each of the Plaintiffs' claims, separate evidentiary spillover would increase the risk that the jury would decide one Plaintiff's case based on evidence from the other Plaintiff's case and that this would result in unfair claim-bolstering that would prejudice NBR. (Dkt. #7 at 9). Plaintiffs respond that

severance is not required to avoid prejudice because "this case involves only two Plaintiffs who assert the same three claims, and they will rely on much of the same evidence and many of the same witnesses," thus, "[a] single jury is capable of hearing this case." (Dkt. #12 at 9).

To support their contention that the claims should be severed to avoid prejudice under Rule 21, NBR argues that courts have recognized "a legitimate prejudice concern" that juries will decide one plaintiff's claim based on the evidence submitted by another plaintiff. (Dkt. #7 at 9). NBR primarily relies on *Dixon*, but the concerns in *Dixon* are not comparable to this case. *See Dixon*, 2023 WL 121994 at *3 (stating that joinder would likely prejudice the defendants because plaintiffs worked at two different job sites with different supervisors, and as a result, plaintiffs' claims involved different witnesses and evidence with very little overlap between the two cases). Unlike the plaintiffs in *Dixon*, Kelley and Anderson worked at the same job site under the same supervisors and rely on much of the same evidence and witnesses. (Dkt. #12 at 6). Accordingly, *Dixon* is unhelpful to NBR's severance request.

Finally, as to NBR's concern that some evidence relevant to one Plaintiff's claims may be prejudicial to NBR concerning the other Plaintiff's claims, the Court can mitigate any such potential prejudice through appropriate jury instructions. *See Horne*, 2019 WL 5550626, at *6 ("[A]ny prejudice to [the defendant] can be managed by appropriate limiting instructions."). Thus, the Court finds that severance is not necessary to avoid prejudice to NBR.

**E. Witnesses and Documentary Proof**

According to NBR, while there may be "limited overlap as to some payroll or policy witnesses," "the bulk of the trial proof will not overlap" because the claims are highly individualized and will require their own evidence and witnesses. (Dkt. #7 at 10). However, as the Court has already noted, the Plaintiffs' claims share many of the same questions of law or fact, and as a result, much of the discovery in this case and many of the witnesses will be the same for both Plaintiffs. *See Horne*, 2019 WL 5550626, at *6 ("When it is likely there will be a number of witnesses in common amongst all plaintiffs and judicial economy would be facilitated by not severing the claims, severance should be denied."). *But see Dixon*, 2023 WL 121994, at *3 (granting motion to sever where plaintiffs' claims involved different witnesses and evidence, with very little overlap between the two cases). While some evidence will be unique to each Plaintiff, NBR has not shown that the evidence is so unique and individualized that it merits the burden of two separate trials when much of the evidence overlaps.

* * *

In sum, the record before the Court at this stage of the litigation, particularly the overlapping potential witnesses and evidence and the common issues of fact or law, weighs against severance. To the extent that further development of the record supports a different conclusion, NBR will be permitted to renew its severance request.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant NBR's Motion to Sever (Dkt. #7) is **DENIED without prejudice**.

**So ORDERED and SIGNED this 9th day of October, 2026.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE